The next case this morning is 5-23-07-26 People v. Foster. Arguing for the appellant is Emily DiStefano. Arguing for the appellee is Hiram Fincak. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honors. Ms. DiStefano, you represent the defendant? That's correct. Okay, before we proceed, there is a third panel member that's assigned to this case, Justice Welch. He's not able to be with us this morning, but he does have the audio that's being recorded available to him for his review when he considers this case. So even though he's not here in person, he's here in good spirit. Ms. DiStefano, you may proceed when you're ready. Thank you, your honor. Good morning, your honors, and may it please the court. My name is Emily DiStefano from the State Appellate Defender for Stephen Foster. As your honors are aware, there are five issues in this brief. I plan to focus on the second and fourth issues, the surprise legal theory presented in rebuttal closing argument, and the countless evidentiary errors, including one conceded by the state that denied Foster a fair trial in a closed case. In this case, the state charged Foster with three counts of attempt murder for three separate victims. As charged, the state had to prove specific intent to kill each individual, intent to kill Jackie Sharp, intent to kill Troy Jones, and intent to kill Charles Thompson. The state also had the option to prove guilt on the legal theory of transferred intent. To use that theory, though, the state needed to provide Foster notice, but they did not do this. It wasn't until rebuttal that the state argued to the jury Foster had gotten into a fight with Ken Jones and Charles Thompson earlier in the night demonstrating his intent to kill them, but the state admitted that they didn't have that same evidence for Jackie Sharp and Troy Jones. So they introduced a new legal theory in that moment, declaring to the jury, quote, when you intend to kill one person and you shoot another person, your intent transfers to that person. This is an accurate statement of the law when the state provides notice of that theory, but here it was introduced for the first time in that moment. Foster had no way of defending against that claim, as the state had just pronounced that if the jury thought he was trying to kill Charles and Ken, then they could assume that he was also trying to kill Jackie and Troy, who were bystanders. Where the jury could have only convicted Foster based on that surprise legal theory improperly brought up for the first time in rebuttal, there can be no faith in the outcome of Foster's  The state belatedly argued this in rebuttal, and the judge's oral and written instructions did not address this principle. This confusing guidance left the jurors to believe the state's assertion on that legal theory that intent transferred, requiring them to convict on all counts of attempt to each victim. Foster had no chance to defend against this brand new theory and did not receive a new trial. We asked this court to remand for a new trial on this issue. This egregious error was further amplified by the fact that this was a close case. Despite what the state argues, the evidence here was simply not overwhelming. It was a circumstantial case, and it was not a strong one. The shooter in this case never identified. Foster never identified in a lineup in court, never identified as the shooter, nor identified on any surveillance footage outside of that initial altercation. The weapon in this case never recovered. Eyewitness testimony inconsistent and mostly tied to deals with the state. Other forensic evidence non-existent. And this left the state to rely on the inconsistent witness testimony and the other evidence that the state now in part agrees should not have been admitted. This leads to the fourth issue in the brief that the trial court committed countless evidentiary errors. If this court agrees that the numerous instances I'm about discussed should not have been admitted, then the state's already weak case falls apart. Importantly, the state's entire case rested on the timeline events as this was a circumstantial case and matching pieces of evidence to the timeline of that shooting. To do this, the state used AT&T phone records, testimony about those records, testimony about Facebook Messenger, and Foster's video interrogation. The central piece were those AT&T phone records, and the court should have never allowed them in because they lacked the proper certification under Illinois Rule of Evidence 902.11. The state agrees with this. On page 35 of their response brief, they say that they concede that the trial court erred by admitting the records and the related testimony. But the state argues that this has no bearing on the outcome because the evidence is overwhelming without it. It's ironic to argue now on appeal that a piece of evidence that was so central to their case at trial is now meaningless. It's not meaningless. Every argument rested on the idea that Foster made calls at specific times that matched the specific areas that corresponded with the time of the shooting. A thorough review of the brief is important to emphasize this argument, but crucially, the state had Detective Tim Lawrence testify that specific calls showed location data consistent with my client being at Oakwood Estates at the time of the shooting, which is where the shooting took place. The state relied heavily on those cell phone records and closings, citing each time Foster made a call in the corresponding tower that it pinged from. The state also relied on another witness's testimony, Sgt. Splittorf. He was allowed to provide expert testimony about Facebook Messenger and its technology, but was never tendered as an expert in Facebook, nor was the proper foundation laid for him to testify as such. He testified that Facebook Messenger's application records timestamps for when the communication ends, not when it begins. The state used this impermissible testimony to refute my client's claim that he was on the phone during the shooting, but Splittorf had no training in Facebook technology specifically, and they asked the jury to take his word for it that that's just how Facebook worked. Nothing else was presented to support this expert opinion, and again, added to the timeline that the state was trying to prove, but it should not have been permitted. The same goes for Foster's interrogation, that at trial and now on appeal, the state admits lacked any real admissions. The state got to play all two hours and 17 minutes of that video, which contained countless inflammatory statements from the police and evidence of other crimes. But above all, in that interrogation, Foster maintained that he did not shoot anyone. If the state wanted to admit that video to show his story changed in other ways, they should have clipped those portions of the video. Instead, the jury heard officers' opinions about Foster's guilt, hearsay about what other witnesses told the police, talked about Foster's previous time in prison, Foster's propensity for violence, and much more. The jury heard officers in that video say things like, I think you're lying, and I have multiple witnesses telling me stories that are corroborated by the overwhelming evidence, and if I was in your spot, I wouldn't want to sit in front of 12 jurors. Even worse, admitting the whole video was not necessary as Detective Bennett testified to the key inconsistencies, which is why the state said they wanted to admit it. Detective Bennett also was allowed to impermissibly testify to what's characterized as human lie detector testimony. He testified that he observed Foster making certain actions like drinking from an empty cup and that that constituted him lying. This inflammatory evidence was added to the other inflammatory statements in the video and should not have been allowed in. The cumulative effect of these errors warrants a new trial. This argument barely scratches the surface of the dense nature of this case, but the trial court abused its discretion by admitting those pieces of evidence, especially the phone records that the state concedes should not have been admitted. Given these errors, the court can have no confidence that Foster's trial was fair. We ask that this court find cumulative error in reverse. And that's all I have, Your Honors. Okay, Justice Moore. All right, Mr. Fenjack, for the state. Good morning, Your Honors. This is Hiram Fenjack representing the state in this matter. I have a bit of a cold, so I apologize in advance for that. With respect to the defendant's first argument regarding the transferred intent issue, the state's discussion of this principle during rebuttal was proper. Unlike in People v. Millsap, which the defendant primarily relies upon, this was not a new theory of guilt. The fundamental elements of attempted murder remained unchanged. The state was still required to prove the defendant intended to kill an individual and took a substantial step towards that end. Millsap is distinguishable because there the defendant was deprived of the opportunity to address whether the evidence demonstrated his guilt under a theory of accountability, which changed the elements the state needed to prove. Here, the state merely clarified that the specific identity of the victim was not an element of the offense of attempted murder. The appellate court decision in People v. Sangster directly supports the state's position. In Sangster, a similar situation arose. During closing arguments, the defendant argued he had no motive to kill the specific victim, and the state properly discussed the concept of transferred intent during rebuttal. Further, the state's argument was consistent with the jury instructions. While the court did not provide a separate instruction explaining the concept of transferred intent, the patterned jury instructions used by the court defined attempted first-degree murder as when the defendant, with the intent to kill an individual, does any act which constitutes a substantial step towards the killing of an individual. There is no specific requirement for a specific individual, and that's clear from the patterned jury instructions. Therefore, the defendant's attempt to manufacture error from the state's proper rebuttal argument should be rejected. Turning to the defendant's evidentiary challenges, while the cell phone record's certification was technically deficient because it lacked the under-oath language required by Rule 902, any error in the introduction of this evidence was harmless beyond a reasonable doubt given the overwhelming evidence of the defendant's guilt. The cell phone record evidence was merely cumulative. Gates and Robinson testified they dropped the defendant behind Oakwood, and Watkins testified she picked him up there after the shooting. Surveillance footage independently verified this testimony, and license plate record data further corroborated this timeline. Thus, the absence of the cell phone record evidence would have had no impact on the verdict. With respect to- Mr. Fenton, let me interrupt you there. It seemed that the state went to a lot of effort to create pinpointing the defendant's location based on the cell phone records and Facebook messenger and everything else that it introduced. Can we assume all of that evidence should have been out? That evidence is cumulative because, like I said, Gates and Robinson testified they dropped the defendant behind Oakwood, and Watkins testified she picked him up there right after the shooting. There's surveillance footage that verifies this. There's license plate record data that corroborates this. So, yeah, I mean, with the cell phone record data, it would be even more stronger specific evidence, but the evidence is still very clear, his location in that area right around the before and after the shooting. Turning to Sergeant Splittorf's testimony regarding the timestamps on the Facebook messenger application, the sergeant testified as to his formal training and his examination of hundreds of social media data pieces. Thus, the foundation was adequately laid for his opinion testimony under Rule 702. Next, the video of the defendant's police interview was highly probative as it contained multiple contradictory statements about his activities that night. Furthermore, the state redacted multiple prejudicial references to his criminal history and the officer's remarks while questioning the defendant never became purely accusatory, as he claims. Last, Detective Bennett's testimony described observable behaviors, such as the defendant pretending to drink from an empty coffee cup and frequently looking up at the video camera. He never opined the defendant was lying or being deceptive. These were permissible lay witness observations. In conclusion, the state respectfully requests that this court affirm the defendant's convictions in sentence. Thank you, your honors. Didn't Detective Bennett make certain observations about why he thought the defendant was lying with the coffee cup and looking up at the camera? He didn't. Off the top of my head, he didn't. He didn't say he thought the defendant was lying. He said these are, you know, behaviors that he has recognized. When a person he's interviewing is nervous or it's indicative of being nervous. The bottom line is he never specifically said I knew he was lying because he, you know, kept looking at the camera. He just testified to his observations about what occurred. Wasn't Bennett asked to comment on the credibility of the defendant in this case? In terms of what? As far as his demeanor during the. During just during the interview during this two hour process wasn't didn't the state ask him to comment on the defendant's actions during the video? Yes, and he commented. And is it proper to ask one witness? I'm sorry. Is it proper to ask one witness to comment on the credibility of another witness under Illinois law? He testified to his observations about the way the defendant was behaving during the interview. He never said that he knew he was lying or being deceptive on the basis of his observations. Okay. Justice more any questions? No questions. Okay, does that conclude your argument?  Yes, your honor. Okay. Misty Stefano. Yes, your honor. Thank you. I'm going to start with the 1st issue that I discussed the transferred intent issue. The state argues about Millsap that it's distinguishable and that Sankster is more applicable while the precipitating event in Millsap is a little bit different here. The outcome is still the same that a new theory was belatedly introduced that the jury was able to hear as law for Sankster. The state argues that similar to that our case is similar to Sankster because the elements of the crime didn't change, but the elements of the crime don't need to change in order to find error here. A new legal theory was belatedly introduced, which changed the way the chart the state had to prove guilt. The way that the jury instructions would have been modified would have entered the specific individual's names, or it could have been changed to or another individual nearing the way that they change the jury instructions for first degree murder. And it didn't, it doesn't change the elements. It just changed. It changes who you're saying the intent goes to. So the belated introduction of that new legal theory was impermissible. Turning to the next issue, the evidentiary issues. The evidence in this case, the cell phone records did not, were not cumulative. The state talks about how Gates and Robinson testified to dropping the client, my client off, but they entered into deals with the state and changed their stories from the first time that they were interrogated. Additionally, they say that the video surveillance corroborates this, but there's no video confirming my client was in the area at the time of the shooting. There is video footage of some cars dropping off in a very grainy image of somebody else approaching from a far distance. But to say that that corroborates my client being there is not an accurate statement of the evidence. As for Sergeant Splittorf testifying that he has all this experience in, I don't believe it. I think it was open source intelligence and data entry points. And that that's just the way he observed this works. But that's not specific to Facebook Messenger. That's not specific to the Facebook technology. They needed either a certification or a Facebook expert to come in and say, hey, this is when the communication ends, not when it begins. That's how the tech works. And he didn't have that proper expert testimony and no foundation was laid as such. As for the video being admitted, yes, there were redactions made, but the state in its response brief admits that there were some instances that indicated bad acts and other crimes, but they were minimal and there's no real accusations in it. I just gave a few examples in this oral argument that showed where the where the officers were stating impermissible things for the jury to hear. I believe I cited to 25 instances in the brief. So there are many, many examples that show statements that should have never been heard by the jury. As for the impermissible lie detector testimony, if there was any question about whether Detective Bennett's testimony itself constituted accusing my client of lying, the state confirmed that in their closing arguments. In closing, they said, and you saw every time you saw Foster drink from a cup, and it was when he was lying. This directly mirrored Detective Bennett's testimony, which was that he observed these  And when he observed the behaviors, it was when the evidence he confronted my client with conflicted with what my client said the story was. That is characterizing the statements as lies. And for these reasons, Your Honor, we ask the court reversing remand for a new trial. All right, Justice Moore, questions? No questions. All right. Does that conclude your argument for the defendant? Yes, Your Honors. All right. This matter will be taken under advisement, and we will issue an order in due course.